Chief Justice Robertson,
delivered the opinion of the court.
Oar the 20th March, 1824, Elijah H. Reid and Elijan W. Craig, who until then were strangers to each other, entered into an article of agreement under seal, whereby it was stipulated, in substance, that Reid, having engaged 156 hogsheads of tobacco and binding himself to buy as much more as would be sufficient to load three boats which he had bought, agreed that Craig should be admitted “into an equal partnership and a joint and equal concern in the said three boat loads of crop tobacco so engaged and to be engaged by him the said Reid; the same to be paid for, one half by each, and the whole shipped by said Reid on their joint account, risk and advantage, each subject to one half of the nett actual cost and charges; Craig at liberty to pay one half of all cost and charges on the tobacco so shipped, in currency at the rate of two for one specie;” and whereby also Reid acknowledged the receipt of “$1000 in currency, as one half of what may be necessary in meeting the immediate wants in paying for the tobacco bought for cash, &c.
On the 10th of April, 1824, Reid gave his individual covenant, under seal, to James Alverson for $638, 78 cents, payable, $200 thereof in seven days, and the residue on or before the 1st of June, 1824, in notes of the Bank of the Commonwealth, in consideration of tobacco which he, on that day or only á day or two prior thereto, had bought from Alverson, and which was afterwards exported and sold as a part of the three boat loads of partnership tobacco.
Craig having made other advances, it was ascertained on a settlement prior to the institution of this suit, that, after giving-credit for the proceeds of sale which were paid to Craig, Reid was in his debt about $500, for which he gave him his promissory note.
This bill in chancery was filed in March 1826 by Alverson against Reid and Craig, alleging the insolvency and removal from the state of Reid; avering *610 that the partnership was entered into after the sale to Reid of the tobacco, to-wit, on the 20th of May, 1824, but that the tobacco would not have been delivered, (as it was) subsequent to the 10th of May, if Reid had not invigorated his credit by that association, and shewn to him (A1 verson) a copy of the article; and praying for a discovery of the original article, and for a decree against Reid and Craig for the amount of Reid’s covenant, dated in April 1824.
Reid did not answer, and' the bill was taken for confessed against him. Craig, in his answer, insisted that he was not liable as a partner in the purchase, having been, as he avers, only a sub-purchaser from Reid or a partner only after the purchase of all the tobacco by Reid; denied that a suit in chancery could be maintained against him, and complained that it had never been intimated to him that Reid owed Alverson, or that the latter intended to look to him (Craig) until after he had settled with Reid and the partnership had expired. In setting forth the article of partnership, he shewed that it was dated the 10th of March, 1824.
After the answer was filed, Alperson filed an amended bill charging that, at the date of Reid’s covenant with him, the partnership existed, and insisting therefore that, though Craig might not be legally bound by the specialty, he was, as a partner and participant of the profits, liable in equity for the amount which Reid had covenanted to pay him for his tobacco: and, on the final hearing the circuit court decreed accordingly. To reverse that decree this appeal is prosecuted.
It is far from being clear that the chancellor had jurisdiction. If, without sufficient authority, Reid had attempted to bind Craig by the covenant, then, if Craig was originally liable as a partner in the purchase, he would be equitably bound to contribute, though the sealed obligation would not be binding on him. For it is but equitable that, if an agent or partner pursue his authority in making a purchase and exceed it only in attempting to bind his principal, or associate, by a seal, the latter should be compelled by a court of equity to contribute, especially if he enjoyed the profits or his share of them: and in such a *611 case a suit in chancery might be sustained against all the partners, because no legal remedy could reach them. So if Alverson had, in fact, sold his tobacco on the credit of the partnership, and had taken the individual obligation of Reid through mistake, the chancellor might releive him, if the contract of partnership be such as to render Craig liable on the undertaking of Reid. Or if Craig had been a secret or dormant partner, liable for the contract made by Reid with Alverson, as he enjoyed half the profits of the partnership stock and especially of Alverson’s tobacco, though he could not be bound at law by the covenant, undersea], to Alverson, relief against both partners on the original contract might be given by a court of equity. But none of these fácts are directly charged in the bill; and the prayer for a discovery of the partnership agreement cannot, perse, give jurisdiction, because (if there were no other reason) the existence of the partnership might be proved by parol testimony, and there is no allegation that it could not have been so proved.
However, we need not now decide whether, according to a liberal construction, any fact, which could give jurisdiction, may be inferred from the bill or amended bill; for we are of opinion that the decree cannot be sustained on the merits, if the jurisdiction be conceded.
1st. It is at least questionable whether, according to a proper construction, the article of partnership authorized Reid to bind Craig at all in any contract for the purchase of tobacco. He had engaged, on his own account and upon his own individual credit, 156 hogsheads; and it is evident that Craig was not to be equally liable or liable at all to any of the vendors of the tobacco so engaged; as to that, his agreement to pay one half of the cost was an undertaking to pay it to Reid: and we are strongly inclined to think that he did not intend to be responsible to any person except to Reid for the tobacco which he should afterwards purchase, in fulfilment of his undertaking. This construction of the covenant is, in some degree, fortified by the stipulation that Craig’s moiety was to be paid in paper currency at the rate of two dollars in paper for one in specie, from which it may be in *612 ferred that the payment was to be made to Reid, and that the partnership was not to take effect until after the three boat loads had been purchased by Reid on his own account and upon his own credit; and the same idea is countenanced by the fact that Craig was unacquainted with Reid and advanced to him $>1000 to enable him to pay for so much of the tobacco as he had engaged for cash in hand; and by other extraneous facts which will not be mentioned.
If persons represent themselves as partners or permit each other to represent them, no agreement interse will exonerate any of them from the joint liability resulting from contracts in the partnership name or character .
All who are entitled to & receive an equal share of the profits (of a partnership) are equally liable for the cost to strangers whatever may be the agreement of the participants inter se.
If persons represent themselves as partners in busi* ness ortrade or permiteaeh other so to represent them» it is a general rule of law, as well as of equity, that no agreementinter se shall exonerate any of them from the joint liability resulting from contracts in the partnership name or character; and it is also a rule of law, that all who are entitled to, and receive an equal share of the profits, shall be equally liable for the cost, to strangers, whatever may be the agreement of the participants among themselves; Dob vs. Halsey, XVI. Johnson, 34; Wheaton’s Selwyn, 861; Chitty on contracts, 70; and Gow, and Montague, and Watson on partnership.
But where there was no joint contract of purchase on the credit or in the names of several as partners, or where they were not, in fact, partners in the purchase, and did not permit themselves to be represented as such, he alone who made the contract would be responsible; Chitty on contracts, 71-2; Selwyn, 861.
Now in this case there is no proof that, at any time prior to the sale of Alverson’s tobacco, Craig represented himself or was represented by Reid as a partner in the purchase of the tobacco. If then the covenant should be construed, as we are inclined to interpretit, Alverson did not sell his tobacco on the credit of Craig, but sold it to Reid alone and on his individual credit: and even if he had trusted Reid on the faith reposed in Craig as a supposed partner, he cannot be entitled to any decree against him. But he alleges in his original bill that he sold his tobacco to Reid and before (as he then supposed) the partnership commenced; and this is in some degree,confirmed by the fact that he took Reid’s individual covenant under seal. He may not have known that one partner cannot, in virtue of any contract of partnership bind his co-partner by a contract under seal.
*613 But the reasonable deduction from all the allegations and proof is, that the sale was made to Reid on his individual credit; and that Craig, not only not a partner in the purchase but was not so considered by Alverson, at least until after the actual sale of the tobacco.
2nd. The parol liability, whatever it may have been, was merged in the covenant, unless facts, sufli-cient to counteract the deduction of law, from the simple acceptance of the covenant, had been made to appear. If, in fact, the covenant had been taken merely as a collateral security, the, pre-existing liability was not merged. But there is not only no fact tending to prove that the covenant was intended as a collateral security, but there are circumstances which fortify the deduction of law from the fact of executing the covenant. Reid did not attempt to bind Craig by the covenant; it has not been proved or even intimated that the style of the partnership was “Elijah H. Reid.” There could have been no motive for taking Reid’s individual covenant as a collateral guaranty of the joint liability of himself and Craig. There is no proof that Reid was deemed unworthy of credit, except a declaration by one witness that he would not have trusted him.
After the tobacco had been sold and delivered to Reid in his boat he stated, at the time he executed the covenant, that he had a partner. It does not appear that Alverson ever asserted any claim against Craig until this suit was brought, about two years after the date of the covenant, and when it had been ascertained that Reid had left the state and was probably insolvent. As then there is neither proof nor allegation of any mistake, the covenant must be deemed, in equity as well as at law, an extinguishment of Craig’s parol liability, even if, by his agreement with Reid or otherwise, any such liability had been incurred on the sale of the tobacco by Alverson to Reid; Tom vs. Goodrich, (II. Johnson’s Rep. 213;) I. Peters’ C. C. R. 301.
And even if Reid’s covenant had been taken by Alverson as a collateral security only, then the remedy at law would have been plain and ample; and consequently the chancellor should not interfere.
The confession of one partner, after dissolution, is not evidence against a former partner.
Mills, Brown, Chinn and Brack, for appellant; Turner, for appellee.
3rd. If Alverson could, under any aspect of the case, have a right to come into chancery for relief against Craig, his equity should be clear and strong before he would be entitled to a decree; it is not so in its most imposing garb; and there is certainly a countervailing equity, resulting from the fact that Craig was not apprized of the existence of the covenant to Alverson, and seems to have had no reason to suspect that any such claim would ever be made upon him as that now insisted on, until long after the dissolution of the partnership, and after a final settlement between him and Reid. This fact would have presented a formidable barrier to the releif sought by the bill, even if Craig’s original liability in equity had been clear and indisputable at first; on this head see Gow and Montague on partnership (sparsim.)
Taking the bill for confessed against Re'id is no ev* idence against Craig. The confession of one part' ner, after dissolution, is not evidence against a former partner.
Wherefore, on due consideration of the case in all its bearings, we cannot concur with the circuit court.
It is therefore decreed and ordered that the decree be reversed, and the cause remanded with instructions to dismiss the bill.